**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
JEFFREY ST. CLAIR and CATHLEEN ST. CLAIR,
                              Appellants,

             -against-

CADLES OF GRASSY MEADOWS II, L.L.C.,
                              Appellee.
-------------------------------------------------------------------X

          **MEMORANDUM OF**
          **DECISION & ORDER**
          15-CV-4413(ADS)

**Dahiya Law Offices LLC**
*Attorneys for the Appellants*
75 Maiden Lane, Ste. 506
New York, NY 10028
      By: Karamvir Dahiya, Esq., Of Counsel

**Vlock & Associates, P.C.**
*Attorneys for the Appellee*
630 Third Avenue, 18th floor
New York, NY 10017
      By: Stephen Vlock, Esq.
          Steven Paul Giordano, Esq., Of Counsel

**SPATT, DISTRICT JUDGE**

      Presently before the Court is an appeal filed by the Appellants Jeffrey St. Clair and Cathleen St.

Clair (collectively, the "Appellants" or the "Debtors") pursuant to 28 U.S.C. § 158(a) from a judgment

entered by United States Bankruptcy Judge Robert E. Grossman in an adversary proceeding denying

the Appellants discharge of their debts pursuant to 11 U.S.C. § 727(a).

      For the reasons set forth below, the judgment of the Bankruptcy Court is affirmed in its

entirety and this appeal is dismissed.

## I. BACKGROUND

      The Appellant Jeffrey St. Clair is an attorney who practices as a solo practitioner in Brooklyn

specializing in family law and is a part-time professor at Medgar Evers College. (App. Rec. at 1867;

see also Compl., 13-0844, Ex. D, at 25–26; 35–36.) The Appellant Cathleen St. Clair, his wife, is a

physician assistant for New York Methodist Hospital. (See Compl. 13-0844, Ex. J, at 16.)

## A. The Bankruptcy Proceeding

In 2008, the Appellee made a loan to the Appellants. It is unclear what the nature of that loan was. However, the Appellants claim in their brief that they took out a second mortgage on their home with an unidentified bank, and the Appellee subsequently purchased that mortgage on the secondary market. (<u>See</u> the Appellants' Mem. of Law, 15-cv-4413, Dkt. No. 3.)

On an unspecified date, the Appellee obtained a judgment against the Appellants in the amount of $148,599.55 for failure to meet their payment obligations under the terms of the loan. (App. Tr. at 28; <u>see also</u> Pet., 12-73024, Dkt. No. 1, Sch. F.)

On May 11, 2012, the Appellants filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Proceeding"). <u>See</u> *In re Jeffrey and Cathleen St. Clair, 12-73024*.

As will be discussed in more detail below, Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P." or "Rule") 2004 gives a bankruptcy court discretion upon a motion of a party in interest, such as a creditor, to order the debtor to appear for an examination and for the production of documents related to his or her liability and financial condition, or any matter which may affect the administration of the debtor's estate. In addition, an attorney may issue a subpoena on behalf of the court for the district in which the examination is to be held provided that the attorney is admitted in that court or in the court in which the case is pending. <u>See</u> Fed. R. Bankr. P. 2004(c). "'The purpose of a Rule 2004 examination is to allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate.'" <u>In re McLaren</u>, 158 B.R. 655, 657 (N.D. Ohio 1992) (quoting <u>In re Lang</u>, 107 B.R. 130 (Bankr. N.D. Ohio 1989)).

On June 26, 2012, Judge Grossman granted the Appellee's motion for an order directing the Appellants to appear for an examination and produce documents pursuant to Rule 2004. (<u>See</u> Order, 12-73024, Dkt. No. 17.)

On an unspecified date, Stephen Vlock, Esq. ("Vlock"), one of the attorneys for the Appellee, served a subpoena on Narissa Joseph, Esq. ("Joseph"), the Appellants' then-counsel in the Bankruptcy Proceeding, directing the Appellants to produce documents by July 23, 2012 and appear for a Rule 2004 examination on August 6 and August 7, 2012, respectively, at Vlock's New York office. (See Compl.,13-0844, Ex. B.)

On July 18, 2012, at the request of Joseph, Vlock sent Joseph a signed stipulation to adjourn the Rule 2004 examination to August 13 and 14, 2014 and requested that Joseph counter-sign the stipulation so that it could be filed with the Court. (See id.) However, Joseph never signed the stipulation.

On August 6, 2012, the Appellee served amended subpoenas on Joseph directing the Appellants to produce documents by September 4, 2012 and appear for examinations on September 17 and September 18, 2012 (the "Rule 2004 Subpoena"). (See Compl.,13-0844, Ex. C.) The Rule 2004 Subpoena directed the Appellants to produce all documents relating to, among other things, the Appellants' bank accounts, earnings and income, tax returns, expenses, and financial returns. (See id.)

On September 5, 2012, one day after the deadline set by the Rule 2004 Subpoena, Vlock sent a letter to Joseph stating that he had not any received documents from the Appellants and advising Joseph that he would seek court intervention if he did not receive documents from the Appellants by September 7, 2012. (See Compl.,13-0844, Ex. D.)

Joseph and the Appellants did not respond to Vlock's September 5, 2012 letter; did not produce documents responsive to the Rule 2004 Subpoena; and did not appear at the previously scheduled September 17 and 18, 2012 Rule 2004 examinations. (See Compl.,13-0844, Ex. D.)

Accordingly, on September 11, 2012, the Appellee filed a motion to dismiss the Bankruptcy Action pursuant to 11 U.S.C. § 707 based on the Appellants' failure to comply with the Rule 2004 Subpoena. In the alternative, it moved for a conditional order of dismissal if the Appellants failed to appear for an examination or to produce documents by a date certain or an order directing the United

States Marshal to take the Appellants into custody as a means of compelling them to comply with the Subpoenas. The Appellee further sought sanctions against the Appellants and attorneys' fees and costs. (See id.). The Appellee's motion had a return date for a hearing before Judge Grossman on October 15, 2012.

On October 12, 2012, Judge Grossman so-ordered a stipulation adjourning the hearing to October 31, 2012. (See 12-73024, Dkt. Nos. 39, 40.)

The Appellants failed to appear at the October 31, 2012 hearing, and as a result, Judge Grossman adjourned the hearing to November 7, 2012. (See 12-73024, Dkt. No. 45.) On November 7, 2012, the Appellants again failed to appear before Judge Grossman, who adjourned the hearing for a third time to December 5, 2012. (See id.)

On December 5, 2012, for a third time, the Appellants failed to appear for a hearing on the Appellee's pending motion to dismiss. (See 12-73024, Dkt. No. 46.) At the hearing, Judge Grossman directed the Appellee to serve a letter on Joseph, Appellants' counsel, directing the Appellants to appear for a January 30, 2013 hearing or face sanctions. (See 12-73024, Dkt. Nos. 46, 47.)

On January 29, 2013, the Appellants apparently produced some documents requested by the Appellee but not all of them. (See 12-73024, Dkt. No. 53.)

On January 30, 2013, all of the parties appeared before Judge Grossman for a hearing during which Judge Grossman directed the Appellants to produce all of the documents in their possession which were responsive to the Rule 2004 subpoena and appear for a Rule 2004 examination by February 20, 2013. (See id.)

On February 25, 2013, Joseph filed a letter with the Bankruptcy Court representing that she had sent some additional documents to the Appellee's counsel but that "the majority of the requested documents are not in the debtors' possession and it is too costly for them to obtain same [sic]." (12-73024, at Dkt. No. 57.) Joseph and the Appellants never filed a motion to quash the Rule 2004 Subpoena, nor did they file a formal objection to the Subpoena.

On February 27, 2013, the parties appeared before Judge Grossman for a hearing, during which Judge Grossman again directed the Appellants to produce all the responsive documents within their possession and to appear for a Rule 2004 examination at this Courthouse on March 13 and 14, 2013. In addition, if the Appellants did not produce the additional documents, Judge Grossman directed them to file within one week of the date of the hearing, affidavits attesting that they had no additional documents in their possession. (See id.)

On March 12, 2013, Steven Giordano, Esq. ("Giordano"), another attorney for the Appellee, filed a letter notifying the Court that the Appellants had still not produced any responsive documents or filed an affidavit indicating that they had no such documents. (See 12-73024, Dkt. No. 59.)

In response, on March 12, 2013, Joseph filed a sworn affidavit with the Court signed by both Appellants which stated: "[t]he documents we have submitted to Counsel for Cadles are the only document requested documents in our possession and control"; "[w]e have not destroyed any documents requested by Cadles in it's [sic] subpoena"; and "[s]ince the filing of the bankruptcy, we have not destroyed any of the documents requested by Cadles." (See 12-73024, Dkt. No. 60.)

On March 13 and 14, 2013, the Appellee conducted a Rule 2004 examination of Jeffrey St. Clair. (See Mar. 13, 2013 Tr., Compl., 13-0844, Exs. J, K.) At the examination, he testified that: he received $4,000 per semester broken up in weekly installments for teaching as an adjunct professor at Medgar Evers College, but he did not retain any copies of his pay stubs, *see id.* at 36–37; he had received W-2s from Medgar Evers but that they had been destroyed in Super-storm Sandy or he had lost them, *see id.* at 42–43; he believed that a copy of his homeowner's insurance policy and documents regarding the vehicles he purchased had also been destroyed during Super-storm Sandy but could not recall what steps he had taken to locate those documents, *see id.* at 131–132; he had some "receivables" from his law practice, but he did not keep any records evidencing the amounts of those receivables, *see id.* at 150–151; and he generally used letters of engagement to memorialize his attorney-client relationships but refused to produce the letters or provide any information about those

engagements because he contended that the information was subject to the attorney-client privilege, *see id.* at 44–48.

In response to a question from Giordano, counsel for the Appellee, about why he did not look in his records at any time before responding to the Rule 2004 Subpoena, St. Clair stated:

> It's a little bit depressing sometimes for me to have to go over what I don't have, what I'm not making, what I'm not earning. So sometimes, you know what, I just chose to rely on what was already produced. There's nothing coming in, I'm fucking broke, it's nothing else to do. So you need to understand that the context of all of this bullshit. I'm fucking suffering here, and you're trying to bleed me for something I don't have, and have no way of obtaining it. So no sometimes I look at it and I say, this is all I got. God damn, is this depressing, it's depressing. So I gave you as much as I possibly had. There's nothing else to give. There's nowhere else to go . . . . . What you expect to achieve in this drawn out, redundant deposition? There is nothing there, Counselor, nothing. I'm not proud of this. This is a difficult time for me. I've got four children that I have to try to make a living to take care of, and I'm not doing that. So how do you think I feel about it? You think I want to keep going over this shit, looking at it and realizing how inadequate I've been. Have some fucking compassion.

(Id. at 217–18.)  In response to a demand by Giordano to produce the records of a joint bank account held with his children, St. Clair responded, "Leave my kids out of this. They sold their God damn toys and their books, so they have something for themselves. Leave them out of it. Piece of shit."  (Id. at 272.)  He then gave Giordano the finger.  (Id. at 274.)

Subsequently on March 14, 2013, the Appellee conducted a Rule 2004 examination of the Appellant Cathleen St. Clair.  (See Compl., 13-0844, Ex. L.)  She testified that:  she was planning to use a new accountant to file her taxes from 2012 but did not remember his name, *see id.* at 73–74; she made student loan payments of $335 per month but did not produce them to the Appellee because she believed that they were "not asked for," *see id.* at 95–96; and she had copies of bills for cable, electricity, and other services but had not produced them because she did not believe they were "asked for,' *see id.* at 126–27.  At one point during the examination, Giordano, counsel for the Appellee, stopped the examination to ask Jeffrey St. Clair to stop passing notes to Cathleen; to which Jeffrey St. Clair responded, "We're not talking. I mean she's just drawing silly drawings."  (Id. at 93.)

On April 2, 2013, the Appellee filed a supplemental affirmation in support of its motion to dismiss, alleging that the Appellants' testimony at the March 13 and 14, 2013 examinations indicated that they had additional documents responsive to the Rule 2004 Subpoena but refused to produce those documents and answer certain questions.  (See 12-73024, Dkt. No. 63.)

On April 3, 2013, Vlock and Joseph appeared before Judge Grossman for a hearing regarding the Appellee's supplemental affirmation.  (See 12-73024, Dkt. No. 74.)  At the hearing, Joseph stated as follows:

> THE COURT: Ms. Joseph, you represented to this Court on a series of occasions, the most recent being the last hearing, your representation that all the documents that were required to be turned over in my original order were turned over.
> MS. JOSEPH: Yes, Your Honor.
> THE COURT: So either you made a representation that you didn't know the facts, which is one problem, or you lied. Which of those two do you want me to believe?
> MS. JOSEPH: The first one, Your Honor. From my conversation with the –
> THE COURT: Well why do you make representations to me that have no basis in your knowledge?
> MS. JOSEPH: Your Honor, I went over with the debtor over and over with the list of documents –
> THE COURT: So the debtor lied to you?
> MS. JOSEPH: Yes. Their explanation to me was that they didn't believe that they needed to show –
> THE COURT: So why do we need you, why don't we just let the debtors stand up? You're a licensed attorney; is that correct?
> MS. JOSEPH: Yes, Your Honor.
> THE COURT: Is it your job to parrot back to the Court when asked whatever the client tells you?
> MS. JOSEPH: Yes, Your Honor.
> THE COURT: It is?
> MS. JOSEPH: I did ask them about the documents. I went over and over with them in regards to the documents.
> THE COURT: Well obviously your control over this client leaves a lot to be desired, and your conduct in the case is something that we're going to deal with and get to. It may be fine.

(Id. at 6–7.)

In addition, Judge Grossman directed Joseph to produce all the unproduced and responsive documents and a log indicating which documents, if any, the Appellants were withholding on the basis of privilege by the end of the week.  (Id. at 11.)

On May 10, 2013, the Appellee filed a third affirmation stating that on April 5, 2013, he received a letter from Joseph with ten pages of Jeffrey St. Clair's tax returns but that she failed to include any of Jeffrey St. Clair's business records or a privilege log. In addition, the Appellee sought sanctions against the Appellants for at least $7,500, which represented the amount of legal fees it expended in attempting to compel the Appellants to comply with the Rule 2004 Subpoena. (See 12-73024, Dkt. No. 75, at ¶ 15.)

On May 13, 2013, Judge Grossman held a sixth hearing regarding sanctions during which Jeffrey St. Clair testified. (See 12-73024, Dkt. No. 83.) On cross-examination by Giordano, St. Clair testified:

> Q. Mr. St. Clair, isn't it true that you testified that you usually do letters of engagement when you have a client retain your services?
> A. No.
> Q. You didn't testify that, quote, when was the last time you used a retainer for any client. Answer, I don't recall. I usually just do a letter of engagement. You didn't say those words during your deposition?
> A. If I did I must have misspoke and if it --.

(Id. at 12.)

With regard to the issue of privilege, St. Clair testified:

> Court: Your counsel -- did you hear your counsel say that there are no privileged documents. Is she wrong?
> A. With all due respect, your Honor, this is the first I've heard of any -- any ruling or any conclusion on whether or not my documents were privileged. I did receive a document from the counsel for Cadles on Friday through my -- my attorney faxed a copy to me indicating that there was some privilege log that was not submitted, but that was my first knowledge that this was even an issue at this point.

(Id. at 17.)

Following the conclusion of St. Clair's testimony, Judge Grossman issued a ruling from the bench granting the Appellee's motion for sanctions in the amount of $7,500. (See id. at 21–26.)

**B. The Adversary Proceeding**

On April 5, 2013, the Appellee commenced an adversary proceeding against the Appellants pursuant to 11 U.S.C. § 727 ("Section 727") objecting to the entry of the Appellants' discharge (the

"Adversary Proceeding"). (See generally Compl., 13-8044, Dkt. No. 1.) As will be described in more detail below, Section 727 provides protection to creditors by enabling them to prevent a debtor from discharging his or her debts in bankruptcy if the debtor commits certain misconduct which meets one of ten enumerated circumstances. (See id. at 26–27.)

The complaint asserted that the Appellants should be denied a discharge under Section 727 because they allegedly: (i) "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, . . . property of the debtor[s], within one year before the date of the filing of the petition," see Section 727(a)(2); (ii) "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor[s'] financial condition or business transactions might be ascertained," see Section 727(a)(3); (iii) "knowingly and fraudulently, in or in connection with the case . . . . made a false oath," see Section 727(a)(4)(A); (iv) "knowingly and fraudulently, in or in connection with the case . . . presented or used a false claim," see Section 727(a)(4)(B); (v) "knowingly and fraudulently, in or in connection with the case . . . withheld from an officer of the estate . . . any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs," see Section 727(a)(4)(D); and (vi) "refused, in the case . . . to obey any lawful order of the court, other than an order to respond to a material question or to testify," see Section 727(a)(6)(A). (See id. at ¶¶ 40–63.)

On May 8, 2013, the Appellants filed an answer generally denying these claims. (See 13–8044, Dkt. No. 4.)

On August 8, 2013, the Appellee moved for summary judgment on its Section 727 claims. (See 13–8044, Dkt. No. 9.)

On November 4, 2013, Judge Grossman so-ordered the Appellants' motion to substitute Karamvir Dahiya, Esq. ("Dahiya") for Joseph as their counsel of record. (See 13–8044, Dkt. No. 16.)

On November 15, 2013, Judge Grossman issued an order denying the Appellee's motion for summary judgment (the "Summary Judgment Order"). (See 13–8044, Dkt. No. 27.)

On November 21, 2013, the Appellee filed a motion seeking to leave to appeal the Summary Judgment Order to the district court pursuant to 28 U.S.C. § 158(a), which motion was subsequently transferred to United States District Judge Sandra Jeanne Feuerstein for a decision.

On January 21, 2014, Judge Feuerstein rendered a decision denying the Appellee's motion for leave to appeal the Summary Judgment Order on an interlocutory basis because she found that the Appellee failed to advance a "controlling question of law for which substantial ground for difference of opinion exists or demonstrate[] that the appeal implicates 'exceptional circumstances[.]'" See In re St. Clair, No. 13-MC-1057 (SJF), 2014 WL 279850, at *9 (E.D.N.Y. Jan. 21, 2014).

On April 24, 2015, Judge Grossman presided over a one day trial of the Appellee's Section 727 claims. (See App. Rec. at 1853–2035.) At the pre-trial conference, Dahiya objected to the admission of the Appellants' testimony from the March 13 and 14, 2013 Rule 2004 examinations. (See id. at 1863–66.) Judge Grossman overruled the objection but permitted Dahiya to rebut the Rule 2004 testimony by cross-examining the Appellants at trial and granted Dahiya leave to file a supplemental brief on the issue after the trial. (Id. at 1864.)

On July 7, 2015, Judge Grossman rendered a written decision finding that: (i) the Appellants' Rule 2004 examination was properly admitted at the trial; (ii) the Appellee proved by a preponderance of the evidence that the Appellants knowingly and with fraudulent intent made a false oath in violation of Section 727(a)(4)(A); and (iii) the Appellee proved by a preponderance of the evidence that the Appellants refused to obey a lawful order of the court in violation of Section 727(a)(6)(A) (the "July 7, 2015 Order"). (See App. Rec. at 2060–2082.)

Based on these findings, Judge Grossman denied the Appellants' discharge and entered judgment in favor of the Appellee on two of its six Section 727 claims. (Id. at 2082.)

## C. The Present Appeal

On appeal, the Appellants challenge the July 7, 2015 Order because they assert that: (i) Judge Grossman was biased against them and deprived them of a fair trial; (ii) the transcripts of the Rule 2004 examinations were improperly admitted at the trial; and (iii) the substantial evidence does not support the Bankruptcy Court's finding that a discharge was warranted under Section 727(a)(4)(A) and Section 727(a)(6)(A). (<u>See</u> the Appellants' Mem. of Law, 15-cv-4413, Dkt. No. 3, at 4–21.)

For their part, the Appellee disputes the Appellants' contentions. (<u>See</u> the Appellee's Mem. of Law, 15-cv-4413, Dkt. No. 4, at 27–50.)

The Court will address the applicable standard of review and each of the Appellants' arguments below.

## II. DISCUSSION

## A. The Standard of Review

As an initial matter, the parties dispute what standard the Court should apply in reviewing the July 7, 2015 Order.

The Appellants contend that the Court should apply a *de novo* standard because "the issues involves [sic] are consideration of legal principles, federal rules of evidence and interpretation of Title 11 along with the claim of structural error in the legal proceedings throughout the bankruptcy case." (The Appellants' Mem. of Law, 15-cv-4413, Dkt. No. 3, at 4.)

In response, the Appellee asserts that the Court should review Judge Grossman's findings of fact under a clearly erroneous standard and his conclusion of law under a *de novo* standard. (The Appellee's Mem. of Law, 15-cv-4413, Dkt. No. 4, at 1.) The Court agrees.

It is well-established that a "Bankruptcy Court's legal conclusions are reviewed *de novo* and its factual conclusions are reviewed for clear error." <u>In re Hyman</u>, 502 F.3d 61, 65 (2d Cir. 2007) (quoting <u>In re DeTrano</u>, 326 F.3d 319, 321 (2d Cir. 2003)).

Under a *de novo* review, the appellate court affords no deference to the Bankruptcy Court's decision and decides the question as if no decision had been previously rendered.  See In re Reilly, 245 B.R. 768, 772 (B.A.P. 2d Cir.), aff'd, 242 F.3d 367 (2d Cir. 2000) ("A *de novo* review allows us to decide the issue as if no decision had been previously rendered . . . . No deference is given to the Bankruptcy Court's decision.") (quoting In re Miner, 229 B.R. 561, 565 (2d Cir. BAP 1999)); see also United States v. Raddatz, 447 U.S. 667, 690, 100 S. Ct. 2406, 2419, 65 L. Ed. 2d 424 (1980) (Stewart, J Dissenting) ("The phrase '*de novo* determination' has an accepted meaning in the law. It means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy.").

By contrast, a review for clear error is much more deferential to a lower court's fact findings — "'[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Zervos v. Verizon New York, Inc., 252 F.3d 163, 168 (2d Cir. 2001) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); accord In re Reilly, 245 B.R. at 772 ("'To be clearly erroneous, a decision must strike [us] as more than just maybe or probably wrong; it must . . . strike [us] as wrong with the force of a five-week-old, unrefrigerated dead fish.'") (quoting In re Miner, 229 B.R. at 565); see also Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228 (7th Cir. 1989) (same).

"When mixed questions are raised on appeal, they are presumptively subject to *de novo* review." Id. (quoting In re Bammer, 131 F.3d 788 (9th Cir. 1997)); accord In re Portaluppi, No. 3:13-CV-421 MPS, 2014 WL 2559403, at *2 (D. Conn. June 6, 2014), aff'd, 609 F. App'x 30 (2d Cir. 2015).

Courts in this Circuit have generally found that the question of a debtor's knowledge and intent under Section 727(a) — which, as will be described in more detail below, is the primary basis for the Appellants' challenge to the Section 727 findings by Judge Grossman — are questions of fact to which

the clear error standard applies.  See In re Bonnanzio, 91 F.3d 296, 302 (2d Cir.1996) (holding that the district court erred by failing to apply a clearly erroneous standard of review with respect to the bankruptcy court's findings of intent); In re DeRise, No. 07CV3083 (JFB), 2008 WL 850253, at *5 (E.D.N.Y. Mar. 27, 2008) ("'The question of a debtor's knowledge and intent under § 727(a)(4) is a matter of fact . . . .'") (alteration in original) (quoting Cepelak v. Sears (In re Sears), 246 B.R. 341, 347 (B.A .P. 8th Cir. 2000)); In re Smith, No. 3:060-CV-1725 (RNC), 2008 WL 906831, at *1 (D. Conn. Mar. 31, 2008), aff'd, 321 F. App'x 32 (2d Cir. 2009) ("Whether a person acted with the state of mind prohibited by applicable law, including bankruptcy law, is a pure issue of fact.").

Accordingly, the Court will apply a clear error standard in reviewing Judge Grossman's determination that the Appellants had the requisite intent to sustain the denial of a discharge pursuant to Section 727(a)(4)(A) and Section 727(a)(6)(A).

In addition, district courts in this Circuit review a bankruptcy court's decision to admit or exclude evidence under an abuse of discretion standard.  See In re Portaluppi, No. 3:13-CV-421 MPS, 2014 WL 2559403, at *2 (D. Conn. June 6, 2014) ("The district court reviews the bankruptcy court's decision to admit or exclude evidence under an abuse of discretion standard.") (collecting cases); see also  In re DeRise, 2008 WL 850253 at *6 (same) (citing Ball v. A.O. Smith Corp., 321 B.R. 100, 106 (N.D.N.Y. 2005)).  "Either an error of law or a clear error of fact may constitute an abuse of discretion."  Schering Corp. v. Pfizer Inc., 189 F.3d 218, 224 (2d Cir. 1999) (quoting Charette v. Town of Oyster Bay, 159 F.3d 749, 755 (2d Cir. 1998)).  However, "[a]n evidentiary ruling that is an abuse of discretion is . . . only reversible if it also affects a party's substantial rights . . . . This occurs when, for example, a district court excludes a party's primary evidence in support of a material fact, and failure to prove that fact defeats the party's claim."  Id.; accord In re DeRise, 2008 WL 850253 at *6 (same).

Accordingly, the Court will apply an abuse of discretion standard in reviewing Judge Grossman's decision to admit the transcripts of the Appellants' Rule 2004 examinations at the trial.

**B. As to the Claims of Judicial Bias**

As an initial matter, the Appellants urge the Court to reverse the judgment of the Bankruptcy Court because Judge Grossman's "bias, antagonism [toward the Appellants] resulted in the denial of a discharge." (See the Appellants' Mem. of Law, 15-cv-4413, Dkt. No. 3, at 4–21.) To buttress this argument, the Appellants point to several comments made by Judge Grossman at an April 3, 2013 hearing that were critical of the conduct of the Appellants and Joseph, their then-counsel. (See id. at 4–10.)

For its part, the Appellee fails to squarely address this claim in their opposition briefs. That said, the Court finds that even a cursory reading of the record and the relevant case law makes it clear that the Appellants' claim of judicial bias is totally without merit.

"Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality." Chen v. Chen Qualified Settlement Fund, 552 F.3d 218, 227 (2d Cir. 2009).

In that regard, the Supreme Court has found matters relating to judicial bias to impinge upon a party's right to a fair trial in only extreme circumstances generally involving the clear appearance of a conflict of interest and a high probability of actual bias on the part of the judge in question. See, e.g., Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 872, 129 S. Ct. 2252, 2256, 173 L. Ed. 2d 1208 (2009) (finding that the Due Process clause was violated in a civil case where one of the judges on the West Virginia Court of Appeals voted to reverse a $50 million jury verdict against a defendant-corporation after he received "campaign contributions in an extraordinary amount" from the defendant's principle officer a short time before voting to reverse the verdict); Mayberry v. Pennsylvania, 400 U.S. 455, 466, 91 S. Ct. 499, 27 L.Ed.2d 532 (1971) (holding that Due Process requires that a defendant in a criminal contempt proceeding be tried before a judge other than the judge who had determined in an earlier proceeding that contempt charges should be brought against the defendant because of the high potential for bias against the defendant); Tumey v. State of Ohio, 273

U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927) (finding that the Due Process clause required a mayor-judge to recuse himself from a criminal case in which he had a "direct, personal, substantial pecuniary interest in reaching a conclusion against [the defendant] in his case").

Sharp criticisms of attorneys and litigants clearly do not fall into this category. For example, in Chen v. Chen Qualified Settlement Fund, 552 F.3d 218 (2d Cir. 2009), the Second Circuit found a plaintiff-attorney's claim on appeal that a judge's denial of his fee application was tainted by bias to be "meritless" reasoning:

> Here, the record demonstrates that Judge Korman was critical of the quality of Goldman's representation in this case. On one occasion, Judge Korman used derogatory language in referring to Goldman's affidavit in support of the proposed Infant's Compromise Order. Given that the quality of Goldman's work was inextricably intertwined with the court's consideration of the fees application, it was not inappropriate for Judge Korman to express an opinion regarding Goldman's handling of the case. Further, Judge Korman's criticisms of the filing were neither unfounded nor so extreme that they suggest that he was biased against Goldman. Rather, they represented his honest assessment of the issues relevant to the court's determination of Goldman's fee application.

Id. at 227; see also In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1316 (2d Cir. 1988) ("Petitioners' counsel claim that Judge Pollack's criticism of their behavior shows that the judge is personally biased and provides additional grounds for his recusal. To the contrary, counsel's misconduct drew what appears to us to be appropriate warnings from the district court. An appellate court, in passing on questions of disqualification of the type here presented, determines the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party, not on counsel. The sharpness in colloquy between the judge and counsel, quoted by petitioners, does not demonstrate bias, but is well within the acceptable boundaries of courtroom exchange.").

Likewise, in this case, the Appellants claims of bias are based on Judge Grossman's critical comments regarding the Appellants and their counsel for repeatedly failing to appear at court conferences, submitting a false affidavit, and refusing to comply with Court orders. They also take issue with Judge Grossman's suggestion that the Appellee initiate an adversary proceeding under

Section 727 against the Appellants in light of their misconduct. As the cases above establish, such comments are clearly insufficient to disturb the Bankruptcy Court's ruling on appeal on the ground of judicial bias. Indeed, Judge Grossman gave the Appellants multiple opportunities to come into compliance with the Rule 2004 Subpoena and prior court orders, a fact which completely undermines their contention that they were somehow denied a fair trial. In the Court's view, the fact that the Appellants and their counsel repeatedly squandered these opportunities provided Judge Grossman with ample justification to criticize their conduct. Therefore, the Court finds Judge Grossman's comments were entirely reasonable and well within the acceptable boundaries of courtroom exchanges.

## C. As to the Admission of the Rule 2004 Examination Transcripts

The Appellants next challenge Judge Grossman's ruling that the transcripts of the Appellants' Rule 2004 examinations were admissible in evidence at the trial. (See the Appellants' Mem. of Law, 15-cv-4413, Dkt. No. 3, at 11–14.)

As noted, the Court reviews the Bankruptcy Court's evidentiary rulings for abuse of discretion — meaning that the Appellants must show that Judge Grossman's ruling rested on "an error of law," such as the application of the wrong legal principle, or a clearly erroneous factual finding. See In re DeRise, 2008 WL 850253 at *6. In addition, the Appellants must show that the ruling affected their substantial rights. See Schering Corp., 189 F.3d at 224 (2d Cir. 1999). In the Court's view, the Appellants have failed to show an abuse of discretion or an error that affected their substantial rights.

Rule 2004 states "[o]n motion of any party in interest, the court may order the examination of any entity" related to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(a), (b).

"As a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate, . . . , and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" In re Enron Corp., 281 B.R. 836, 840 (Bankr.

S.D.N.Y. 2002) (quoting <u>In re Strecker</u>, 251 B.R. 878, 882 (Bankr. D. Colo. 2000)); <u>see also</u> <u>In re MF Glob. Inc.</u>, No. 11-02790 (MG), 2013 WL 74580, at *1 (Bankr. S.D.N.Y. Jan. 8, 2013) ("'The purpose of a Rule 2004 examination is to allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate.'") (quoting <u>In re McLaren</u>, 158 B.R. at 657).

There are several key differences between a Rule 2004 examination and a deposition made pursuant to the Federal Rules of Civil Procedure. First, "[t]he scope of examination permitted pursuant to Rule 2004 is wider than that allowed under the Federal Rules of Civil Procedure and can legitimately be in the nature of a 'fishing expedition.'" <u>In re Fearn</u>, 96 B.R. 135, 137-38 (Bankr. S.D. Ohio 1989). Second, a Rule 2004 examination affords few of the procedural safeguards offered to deponents under the Federal Rules of Civil Procedure, such as the right to counsel. <u>See</u> <u>In re Duratech Indus., Inc.</u>, 241 B.R. 283, 289 (E.D.N.Y. 1999) ("The scope of a Rule 2004 examination is exceptionally broad and the rule itself is 'peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure does.'") (quoting <u>In re GHR Energy Corp.</u>, 33 B.R. 451, 454 (Bankr. D. Mass. 1983)).

Because of these differences, at least one court has ruled that documents and testimony obtained under Rule 2004 are inadmissible in an adversary proceeding governed by the Federal Rules of Evidence, such as the underlying case at issue here. <u>See</u> <u>In re Oliver</u>, 414 B.R. 361, 371 (Bankr. E.D. Tenn. 2009) ("In an adversary proceeding, discovery is governed by Rules 26 through 37 of the Federal Rules of Civil Procedure, incorporated into Rules 7026 through 7037 of the Federal Rules of Bankruptcy Procedure. More specifically, oral testimony is taken by deposition pursuant to Rule 30 of the Federal Rules of Civil Procedure and its admissibility is governed by Rule 32. Because a Rule 2004 examination is not a deposition, Mr. Householder's testimony will not be admitted into evidence for purposes of the Motion for Summary Judgment. Accordingly, no portion of that Rule 2004 transcript will be considered.").

However, many courts have rejected a *per se* rule and have instead admitted Rule 2004

testimony in adversary proceedings if they find that "the examination[s] w[ere] conducted fairly and in

compliance with the Federal Rules of Civil Procedure." In re Symington, 209 B.R. 678, 687 (Bankr.

D. Md. 1997); see also F.D.I.C. v. Fid. & Deposit Co. of Maryland, 64 F. Supp. 3d 1225, 1235 (S.D.

Ind. 2014) ("3F & D asserts that this testimony is inadmissible because the argument is based upon

Rule 2004 examinations. The court disagrees. Pearlman testified in his deposition in this case that

either Trans Continental Leasing or Trans Continental Airlines had some aircraft . . . . That testimony

is clearly admissible as F & D had the opportunity to examine Pearlman regarding that statement."); In

re McLaren, 158 B.R. at 658 ("Further, admission of appellant's Rule 2004 testimony was particularly

appropriate in light of the circumstances under which this particular examination was conducted. At

his Rule 2004 Examination, appellant was represented by counsel who participated actively. Also, as

the bankruptcy court noted, appellant did not move to have the Rule 2004 Examination treated

confidentially.").

In the present case, Judge Grossman declined to adopt a *per se* rule precluding the admission of

the transcript of the Appellants' Rule 2004 examinations.  Instead, he found that the circumstances of

the examinations justified their admission at trial because "[the] Debtors were represented at the Rule

2004 examinations by counsel, the examinations were done under oath, and transcribed by a court

reporter."  (App. Rec. at 2062.)  In addition, he found that the Appellants suffered no prejudice from

admitting the transcripts because "[a]t trial both Debtors were able to testify and their counsel was

given ample opportunity and leeway to 'cross-examine' them about issues that were not raised or

germane to the Rule 2004 examination."  (Id. at 2073.)

On appeal, the Appellants contend that Judge Grossman's evidentiary ruling was in error

because the Rule 2004 examinations were not depositions and the Appellants were available at trial to

testify.  (See the Appellants' Mem. of Law, 15-cv-4413, Dkt. No. 3, at 11–14.)

In response, the Appellee contends that (i) Judge Grossman's ruling was not contrary to the law; and (ii) even if the ruling was in error, the Appellants waived their objection when they consented to the admission of the Rule 2004 transcripts in the pre-trial order. (See the Appellee's Mem. of Law, 15-cv-4413, at 34–40.) The Court agrees with the Appellee's first contention.

As the cases above establish, some courts have held that Rule 2004 examinations are admissible in adversary proceedings where, as here, the debtors were provided with counsel who were able to object to the questions raised in the examinations. The Appellants do not point to any binding case law to the contrary and therefore, the Court sees no abuse of discretion in Judge Grossman's decision to rely on those decisions, as opposed to the out-of-Circuit decisions cited by the Appellants on appeal.

Furthermore, even if the Rule 2004 transcripts were improperly admitted at trial, the Appellants provide no reason why the ruling affected their substantial rights, particularly, where, as here, the Appellants were permitted to introduce their own testimony at trial rebutting the statements they made during the Rule 2004 examinations. Thus, the Court sees no clear error in Judge Grossman's finding that the admission of the Rule 2004 transcripts resulted in no prejudice to the Appellants.

For these reasons, the Court concludes that Judge Grossman did not abuse his discretion in admitting the transcripts of the Appellants' Rule 2004 examinations.

**D. As to the Denial of Discharge Under Section 727(a)(4)(A)**

The Appellants also challenge Judge Grossman's finding that the Appellants should be denied discharge under Section 727(a)(4)(A)

"The primary benefit of filing for bankruptcy under Chapter 7 is that the financial discharge gives the debtor a 'fresh start.'" Stamat v. Neary, 635 F.3d 974, 978 (7th Cir. 2011) (quoting In re Chambers, 348 F.3d 650, 653 (7th Cir. 2003)). However, obtaining such a discharge is a privilege, not a right, and that privilege is limited to "the 'honest but unfortunate debtor.'" Grogan v. Garner, 498 U.S. 279, 287, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991) (quoting Local Loan Co. v. Hunt, 292

U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)); see also In re Dubrowsky, 244 B.R. 560, 572 (E.D.N.Y. 2000) (Spatt, J) ("[D]ischarge under section 727 is a privilege, not a right, and may only be granted to the honest debtor.'") (citing In re Sicari, 187 B.R. 861, 870 (Bankr. S.D.N.Y. 1994)).

To that end, and as noted earlier, Section 727 requires the denial of a discharge to a debtor under ten enumerated circumstances.  In re Cacioli, 463 F.3d 229, 234 (2d Cir. 2006).  It is well-settled that when a creditor challenges a debtor's discharge under Section 727, the standard of proof is preponderance of the evidence and the burden of persuasion is with the creditor — which in this case is the Appellee.  See Grogan v. Garner, 498 U.S. 279, 289, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); accord In re Boyer, 328 F. App'x 711, 714 (2d Cir. 2009) ("When a creditor challenges a debtor's discharge, the standard of proof is the preponderance of the evidence and the burden of persuasion lies with the creditor[.]") (citing Grogan, 498 U.S. at 289).

Because the denial of discharge under Chapter 7 imposes an "extreme penalty for wrongdoing," the evidence "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1310 (2d Cir. 1996) (quoting In re Adlman, 541 F.2d 999, 1003 (2d Cir. 1976)).

Of relevance here, Section 727(a)(4)(A) provides that the court shall grant a debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."  11 U.S.C.A. § 727(a)(4)(A).  To prove a violation under Section 727(a)(4)(A), the objecting party must show, by a preponderance of the evidence, that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case."  In re Moreo, 437 B.R. 40, 59 (E.D.N.Y. 2010) (quoting In re Dubrowsky, 244 B.R. at 572); accord In re Boyer, 328 F. App'x at 715 (same) (quoting Keeney v. Smith (In re Keeney), 227 F.3d 679, 685 (6th Cir. 2000)).

Here, in the Bankruptcy Action, on May 20, 2013, Judge Grossman issued an order sanctioning the Appellants based on his finding that that the Appellants "made false and fraudulent representations to the Court on the record and by the filing of an affidavit, sworn to on March 13, 2013, that they had no further documents in their possession and/or control other than what was previously turned over to [the Appellee's] counsel." (See 12-73024, Dkt. No. 79; see also App. Rec. 2076 n. 5.) In the adversary proceeding, Judge Grossman found that the first two elements of a Section 727(a)(4)(A) violation — namely, that the Appellants made a statement under oath that was false — and the fifth element — materiality — had already been established by the May 20, 2013 Sanctions Order. (App. Rec. at 2075–75.) Thus, he concluded that the only issue in dispute was the fourth element — namely, whether the Appellants acted with fraudulent intent when they submitted a false affidavit in the Bankruptcy Action. (Id. at 2075.)

With regard to the issue of intent, Judge Grossman found that "[w]hen examining the totality of the actions of [the Appellants] , . . . each individually has exhibited the requisite fraudulent intent to satisfy the requirement of § 727(a)(4)." (Id. at 2079.) Specifically, Judge Grossman stated:

> From the beginning of this case Debtors have engaged in a pattern of delay and obfuscation with the sole intention of turning over as few documents as possible. Debtors missed deadlines, engaged in last minute requests for more time, and—along with their lawyer—failed to appear at hearings in October, November, and December 2012. Although the original date for document production and the Rule 2004 Examinations was August 2012 Debtors did not perform either activity until March of 2013, over eight months later and only after they were threatened with sanctions. Even then, Debtors failed to turn over numerous documents including any information about Mr. St. Clair's work at Medgar Evers College or his law practice.

(Id. at 2076.)

Judge Grossman also did not find the two explanations offered by the Appellants for their conduct to be credible. (Id. at 2077.)

First, he rejected the Appellants' good faith reliance on counsel defense because (i) Joseph, their former counsel, testified at an April 3, 2013 hearing that "she personally went over the document list with [the Appellants] and [they] cho[se] which documents to produce"; and (ii) the Appellants

testified at trial that they only gave Joseph the documents they "believe[d] she was asking for" and did not "tell[] her what other documents or information they possessed." (Id. at 2077–78.)

Second, he rejected the Appellants' argument that they failed to produce the documents requested in the Rule 2004 Subpoena because the documents had been destroyed by Super-Storm Sandy. (Id. at 2078) That is because, according to Judge Grossman, the "original subpoena was served in August of 2012, while [S]uper-storm Sandy did not occur until the end of October." (Id. at 2078.) In addition, he noted that Jeffrey St. Clair testified at the trial that "many of the documents were only merely damaged by water or sewage and it was Debtors unilateral decision to 'destroy' those documents by discarding them." (Id. at 2079.)

Finally, Judge Grossman found that the disrespectful conduct of Jeffrey St. Clair and to a lesser extent Cathleen St. Clair also evidenced bad faith and fraudulent intent under Section 727(a)(4)(A). (See id.)

On appeal, the Appellants contend that "missing deadlines, failure of production [which the debtors properly explained], or delay on their own are not reasons for adducing fraudulent intent when the debtors clearly explained their position and reasons for their conduct." (See the Appellants' Mem. of Law, 15-cv-4413, Dkt. No. 3, at 17.) They further contend that "there is nothing in the record which shows any *malafide* intentions of the debtors in explaining their predicament. False oath must be intentional to deny a discharge. False answers resulting from carelessness or ignorance do not bar the discharge." (Id. at 18.)

For its part, the Appellee contends that the Court "properly found that the entire course of conduct by the St. Clairs from the outset demonstrated their intent and required their discharged be denied." (The Appellee's Mem. of Law, 15-cv-4413, Dkt. No. 4, at 31.) The Court agrees.

As already noted, "[a] finding of fraudulent intent [under Section 727(a)(4)(A)] is a finding of fact reviewed for clear error." In re Retz, 606 F.3d 1189, 1197 (9th Cir. 2010); accord In re McCormack, No. 06-1053-(BK), 2007 WL 642945, at *1 (2d Cir. Feb. 27, 2007) (Summary Order)

("Upon our review of the record in this case, we find that there was no clear error in the bankruptcy court's finding that the defendants did not conceal an interest in the Middlefield property with an actual intent to hinder, delay or defraud a creditor or officer of the bankruptcy estate."). Thus, Judge Grossman's factual finding of fraudulent intent can be overturned only if in reviewing the entire evidence, the Court "is left with the definite and firm conviction that a mistake has been committed." Zervos, 252 F.3d at 168 (internal quotation marks and citation omitted).

In reviewing the entire evidence, the Court finds no clear error in Judge Grossman's finding that the Appellants submitted a false affidavit with fraudulent intent. As Judge Grossman correctly noted, "a showing of reckless disregard for the truth is sufficient to prove fraudulent intent." Stamat, 635 F.3d at 982; see also In re Moreo, 437 B.R. at 62 ("A debtor shall be denied a discharge if he is found to have exhibited a 'reckless indifference to the truth.'") (quoting Painewebber Inc. v. Gollomp (In re Gollomp), 198 B.R. 433, 438 (S.D.N.Y. 1996)); In re Casado, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995) ("'[R]eckless indifference to the truth . . . is the equivalent of fraud.'") (alteration added) (quoting In re Diorio, 407 F.2d 1330, 1331 (2d Cir. 1969)). Thus, the Appellee did not need to prove that the Appellants acted with a malicious intent, as the Appellants appear to suggest on appeal.

While the Appellants are correct that "missing deadlines, failure of product[,] or delay" are on their own generally not sufficient to prove a reckless disregard for the truth, "the aggregate of [a debtor's] misstatements and omissions of fact can demonstrate a pattern of reckless disregard for the truth and intent of concealing information from the Court and its creditors." In re Moreo, 437 B.R. at 64; see also In re Kaiser, 722 F.2d 1574, 1584 n. 4 (2d Cir.1983) (noting that a pattern of falsehoods evidencing a "reckless and cavalier disregard for the truth" is sufficient to establish fraudulent intent); In re Shah, 388 B.R. 23, 39 (Bankr. E.D.N.Y. 2008) ("Each of these facts taken individually may not rise to the level of materiality, but cumulatively, they show a pattern of deceit.").

When viewing the totality of the Appellants conduct, there is more than ample evidence in the record to support a finding that the Appellants acted with reckless disregard for their clear obligation to produce documents in their possession responsive to the Rule 2004 Subpoena.

In that regard, the Subpoena requests a long list of documents relating to the Appellants' banking records, sources of income, tax records, insurance, vehicles, and many other items.  (See Compl., 15-cv-4413, Dkt. No. 1, Ex. C.)  On June 26, 2012, Judge Grossman issued an Order directing the Appellants to comply with the Subpoena.  (Id. at Ex. A.)

The Appellants never disputed that they received the Subpoena, and Joseph, the Appellants' former attorney, testified at a April 3, 2013 hearing that she sent the Appellants the Rule 2004 Subpoena and went over the list of documents requested with the Appellants.  (See 12-73024, Dkt. No. 74, at 6–7.)

Thus, the Appellants were clearly aware of their obligation to produce documents under the Subpoena.  Indeed, it is reasonable to infer from the fact that Jeffrey St. Clair is a practicing attorney in this District, that he and by extension his wife — who was a physician's assistant and hence, also apparently well-educated — were fully aware that they were (a) required to comply with a Court-ordered Subpoena; and (b) that they would face consequences if they failed to comply with it. See In re Moreo, 437 B.R. at 64 n. 2 (E.D.N.Y. 2010) ("In determining whether the debtor made a false statement with the intent to deceive, the Court can consider, among other factors, the debtor's level of financial sophistication.") (citing In re Smorto, No. 07-CV-2727 JFB, 2008 WL 699502, at *1 (E.D.N.Y. Mar. 12, 2008).

However, as Judge Grossman exhaustively detailed in the July 7, 2015 Order, the Appellants failed to produce any documents responsive to the Subpoena until January 29, 2013, more than four months after the original return date, and only did so after Judge Grossman threatened them with sanctions.  When they did produce documents, the Appellants made incomplete productions without asserting a privilege or explaining on what basis they were not producing documents. (See 12-73024,

at Dkt. No. 53, 57.)  On March 12, 2013, the Appellants, again only after being ordered to do so, filed a sworn affidavit with the Bankruptcy Court indicating that they had produced all the responsive document in their possession and control.  (See 12-73024, Dkt. No. 60.)

However, at their March 13 and 14, 2013 examinations, the Appellants gave evasive and churlish responses when asked about the documents in their possession.  At one point Jeffrey St. Clair called Giordano, one of the Appellee's attorneys, a "piece of shit" and gave him the finger in response to a request for documents relating to a joint-bank account.  (See Mar. 13, 2013 Tr., Compl., 13-0844, Ex. K. at 272–74.)   Similarly, Cathleen St. Clair was apparently doodling in the middle of her Rule 2004 examination.  (See 12-73024, Dkt. No. 63.)

In addition, in direct contradiction to their sworn affidavit, the Appellants admitted in their Rule 2004 examination that they did in fact possess documents, such as letters of engagement, W-2s, and bills — all of which were clearly within the scope of the Rule 2004 Subpoena — but consciously decided not to produce them because they believed they were privileged or were not "asked for." (See Mar. 14, 2013 Tr., Compl., 13-0844, Ex J at 44–48; Ex. L at 73–74, 93, 126–27.)  Further, while they did claim some of the documents were destroyed by Super-storm Sandy, the Appellants could not recall what steps, if any, they had taken to locate them.  (See Mar. 13, 2013 Tr., Compl., 13-0844, Exs. J at 44–48.).

The Court finds that the Appellants' obstructive conduct at their Rule 2004 examinations, alone, justifies an inference of reckless disregard for both the truth of their sworn affidavit and their clear obligations to comply with the Rule 2004 Subpoena.  Also, when viewed in the context of the Appellants repeated failure to comply with Court orders and appear at Court-ordered hearings, there is overwhelming evidence from which Judge Grossman could infer that the Appellants acted with fraudulent intent.  Stamat, 635 F.3d at 982 ("Given the Stamats' level of education and business experience, their failure to disclose the required past business interests, property transfers, and income as discussed above shows a reckless disregard sufficient for the bankruptcy court's finding of intent

under section 727(a)(4), and we do not disturb that finding."); <u>Weiss</u>, 2001 WL 423050 at *4 ("These repeated material omissions, made by a sophisticated businessperson, represent a pattern of falsehoods more than sufficient to support the conclusion that Weiss acted with fraudulent intent.").

Nor does the Court find clear error in Judge Grossman's determination that the Appellants' testimony at trial that (i) that they gave all the documents in their possession to Joseph, their attorney; and (ii) most of the responsive documents were destroyed by Super-storm Sandy, was not credible.

The Appellants do not dispute the accuracy of the testimony cited to by Judge Grossman indicating that the Appellants withheld documents from their attorney. Further, as Judge Grossman correctly noted, it is well-established that the advice of counsel defense fails where a client does not fully disclose *all* of the relevant facts to his or her attorney. See <u>In re Degan</u>, No. 13-34278-ABA, 2015 WL 139175, at *4 (Bankr. D.N.J. Jan. 9, 2015) ('The good faith reliance defense [to a Section 727(a)(4)(A) action] requires full disclosure of all relevant facts to the attorney, and reasonable advice from counsel.'") (quoting <u>In re Herchakowski</u>, No. ADV 11-1679, 2013 WL 620291, at *4 (Bankr. D.N.J. Feb. 19, 2013), supplemented, No. 10-49287, 2013 WL 1867991 (Bankr. D.N.J. Apr. 29, 2013); <u>In re Geller</u>, 314 B.R. 800, 808 (Bankr. D.N.D. 2004) ("Reliance on attorney advice absolves a debtor of fraudulent intent only when that reliance was reasonable and the advice given was informed advice . . . . The court is simply not convinced that Attorney Rosenberg was fully informed by the Debtors. Attorney Rosenberg is an experienced and reputable attorney, and he repeatedly emphasized to the Debtors the importance of disclosure and truthfulness.").

Nor do the Appellants dispute that Super-storm Sandy occurred in late October 2012, approximately three months after June 26, 2012, when the Court first directed the Appellants to comply with the Rule 2004 Subpoena. Thus, even assuming Super-storm Sandy did destroy some of their financial and personal documents, the Appellants did not provide a credible explanation for why they failed to produce *any* documents in the three-month period before the storm, despite their clear obligation to do so.

Accordingly, the Court also finds no clear error in Judge Grossman's finding that the Appellants' stated excuses justifying their conduct were not credible and did not rebut a finding of fraudulent intent.

Finally, the Appellants challenge Judge Grossman's finding as to the fifth element of a Section 727(a)(4)(A) violation that the Appellants' filing of a false affidavit was "materially related to the bankruptcy case." (See the Appellants' Mem. of Law, 15-cv-4413, Dkt. No. 3, at 16.) Again, the Court disagrees with the Appellants in this regard.

Materiality under Section 727(a)(4)(A) is not a difficult standard to meet — "'[a]n item is material if it is related to the debtor's 'business transactions or estate which would lead to the discovery of assets, business dealings, or existence or disposition of property.'" In re Moreo, 437 B.R. at 65 (quoting In re Murray, 249 B.R. 223, 228 (E.D.N.Y. 2000)). Indeed, "[t]he statute itself does not contain an explicit materiality requirement. Rather, the requirement was created by courts to ensure that debtors are not denied discharge for inconsequential or technical omissions." In re Murray, 249 B.R. at 228. Thus, courts have found that the non-disclosure of any assets that are potentially part of the bankruptcy estate to be material even if they are worthless or possibly exempt from distribution to creditors. See id. at 230 (E.D.N.Y. 2000) (finding that the debtors' failure to disclose information about a 401K plan and a $8,000 check was material even though the assets were arguably exempt assets under the bankruptcy code); see also In re Moreo, 437 B.R. at 65 (finding that a debtors' failure to disclose three personal injury lawsuits to be material even though those lawsuits were potentially worthless).

Here, the Appellants' failed to disclose documents related to, among other things, Jeffrey St. Clair's income from his law practice and his job as a professor, their automobiles, and their tax returns. All of these documents could clearly "lead to the discovery of assets, business dealings, or existence or disposition of property." In re Moreo, 437 B.R. at 65. Accordingly, even under *de novo* review, the

Court finds that Judge Grossman properly concluded that the Appellants' false affidavit was material for purposes of Section 727(a)(4)(A).

For these reasons, the Court affirms the Bankruptcy Court's determination that the Appellants "knowingly and fraudulently . . . made a false oath" and therefore, should be denied a discharge under Section 727(a)(4)(A).

## E. As to the Denial of Discharge under Section 727(a)(6)(A)

The Appellants also challenge the Bankruptcy Court's alternative holding denying a discharge to the Appellants under Section 727(a)(6)(A).

Section 727(a)(6)(A) provides that a bankruptcy court shall grant a discharge, unless "the debtor has refused, in the case . . . to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]"

Before denying a discharge under this subsection, the Second Circuit has stated that a bankruptcy court "should consider such factors as the intent behind the bankrupt's acts-were they wilful or was there a justifiable excuse; was there injury to the creditors; and is there some way that the bankrupt could make amends for his conduct." In re Kokoszka, 479 F.2d 990, 998 (2d Cir. 1973). As a result, bankruptcy courts have held that "'a mere failure to obey the order, resulting from inadvertence, mistake, or inability to comply, is insufficient; the party seeking revocation must demonstrate some degree of volition or willfulness on the part of the debtor.'" In re Leone, 463 B.R. 229, 247 (Bankr. N.D.N.Y. 2011) (quoting In re Gardner, 384 B.R. 654, 669 (Bankr. S.D.N.Y. 2008)).

Here, Judge Grossman found that the May 20, 2013 Order already established that the Appellants "failed to comply with this Court's Order, dated June 26, 2012, the Subpoenas dated August 6, 2012, as well as Orders issued from the bench thereafter on November 7, 2012, January 30, 2013, February 27, 2013, and April 3, 2013." (App. Rec. 2081 n. 7.) Thus, the only remaining issue was whether the Appellants' failure to comply was a willful act and whether there was a justifiable

excuse.  (Id. at 2081.)  Judge Grossman found that the Appellants had acted willfully, relying on the same facts and analysis discussed with regard to Section 727(a)(4)(A).  (See id. at 2081–82.)

Again, the Court reviews Judge Grossman's finding of the Appellants' willful intent under a clear error standard and finds no such error.  Based on the facts already discussed above indicating that the Appellants repeatedly failed to comply with court orders and acted to obstruct discovery in the Bankruptcy Action, there was more than ample evidence from which to infer "some degree of volitions and willfulness" on the part of the Appellants.  See In re Thilman, 548 B.R. 1, 10 (Bankr. E.D.N.Y. 2016) ("Accordingly, the Court finds that defendant's failure to comply with the December 23 Order and the July 9 Order in the face of repeated warnings of the consequences of noncompliance is willful.");  In re Enright, No. 10-10873, 2013 WL 6080180, at *5 (Bankr. D. Vt. Nov. 18, 2013) ("Based on the Examiner's report that the Debtor 'was less than candid' and 'unable or unwilling to produce documents,' the Court finds that the Plaintiffs have set forth sufficient facts to establish that the Debtor violated the Court's directive to proceed in good faith. These same Examiner findings also support a finding that the Debtor's behavior was willful.");  Handwerker v. AT & T Corp., 211 F.R.D. 203, 209 (S.D.N.Y. 2002) ("'[A] party's persistent refusal to comply with a discovery order' presents sufficient evidence of willfulness, bad faith or fault.") (quoting Monaghan v. SZS 33 Associates, L.P., 148 F.R.D. 500, 509 (S.D.N.Y. 1993)).

Accordingly, the Court also affirms Judge Grossman's decision to deny the Appellants a discharge pursuant to Section 727(a)(6)(A).

### III. CONCLUSION

For the foregoing reasons, the Court affirms the July 7, 2015 Order in its entirety, dismisses this appeal, and directs the Clerk of the Court to close this case.

**SO ORDERED**
Dated: Central Islip, New York
May 14, 2016

                                   _/s/ Arthur D. Spatt_
                                   ARTHUR D. SPATT
                          United States District Judge